*2
 
 Ruffiw, C. J.
 

 Under the interlocutory order, made at the last term in this cause, 2 Ire. Eq. 424, the mister has reported that Frances Augustus T)e la ‘Mothe and Mary C. Kron were not qualified to hold land in this State, at the death of the testator.
 

 'To that the counsel for the Fores tiers have excepted, because, in 1824, Mrs. Kron made a declaration in this Court of her intention to become a citizen, and Frances A. De la Mothe made a similar declaration in 1840.
 

 The exception must be overruled. The .testator died in 1838, and therefore clearly the brother could not take land when the testator died and the. legacy to him could be charged on land. But if he had made his declaration as Mrs. Kron did, it would not make them citizens. The alienage continues after the declaration until the order for naturalization; which, indeed,' has not yet' been made.— Nor could these persons hold land under the 4th section of our State Constitution, since it does not appear that they bad taken the oath of allegiance to the State.
 

 In setting a value upon the real and personal estates, so .as to apportion between them the common charges,on them, the Master found the value of the fee simple in possession of the land assigned for the dower of the testator’s, widow to be 12600 ; and that the value of the life estate js $1650, and of the reversion #950, on which latter sum.Mrs. Kron’s children are to contribute, in respect to this part of the land, with the personalty, towards the payment of the legacies and.expenses chargeable thereon.
 

 To this part of the report the Forestiers have also excepted, “because the sum deducted from the estimated value of the real estate, on account of the encumbrance of th.e dower, is unreasonably large.”
 

 The Master states in the report, that the widow'is 34 years old, and that he estimated her life at 29 years'; 'and
 
 *3
 
 that, so doing, he assumes the sum of $950, to be the value of the inversion, because that sum and the interest thereon at 6 per.cent, for 29 years, will amount to $2000.
 

 The Court is really at a loss to say, whether the value of it or the reversion is too low or not. The rule, indeed, by which the Master arrived at his result is not satisfactory, nor can we say, that there is any other that can be laid down. If we could be sure from our own knowledge upon such questions, or it the exceptants had shown by evidence that probably the deduction for dower was too much, and, consequently, their reversion valued too low, and had move d for another enquiry, it would be ordered. The truth is, that we have to encounter many and great difficulties here in estimating the relative values of a life estate in land, and of the dry reversion expectant thereon. There is more or less uncertainty every where, as it depends upon a life. But, from long and careful observation, averages have'been struck in particular countries, which enable persons skilled in such matters to make, in their calculations, such probable approaches to actual results, that they guppose, taking a large number of lives together, they can deal respecting their duration, rather upon the basis of mathematics than of chances. It is in that way that tables of longevity are constructed and the value'of life annuities calculated. And in those countries, when land has a fixed price, not varying indeed, but with the-value of money in different agrs, and when all land readily finds a tenant, and generally an improving one, at a rent that does not fluctuate perceptibly within the period of one life, the value of a life estate may be estimated, from the existing income, with nearly the same confidence that a personal annpity may be. Hence in the same country its value, or ffie rule of valuing it, may vary with different eras in the condition of the country. Formerly the average in England was one third for
 
 *4
 
 the life estate and two thirds for the reversion. But, as was observed by us in
 
 Jones
 
 v.
 
 Sherrard 2
 
 Dev. & Bat. 179, and on the authority of the case there cited, that rule has been decidedly condemned in more recent times. Now, no arbitrary proportion is taken, but it is referred to the master to enquire of the actual values, estimating that of the life estate upon the principle of life annuities, and therefore having regard- to the rate of interest, the annual value of the land, and the age, state of health, and the habits of the tenants for life. To calculate the value even upon those data is not an office of the Judge, but belongs to a distinct profession : Upon the opinions given by which the Court acts, as evidence, in the same measure as in any other case, depending on a question of science. The J udge is not an actuary, nor bound to assume the functions of that personage. It is much safer to proceed on the opinions of the profession, than on any the Court should undertake to form for itself. Now, it is obvious, that the reliance, to which those calculations are entitled, depends on the degree of certainty in the different elements which enter into it. These are the probable- duration of life : which depends on the salubrity of the climate, and the age, health, and habits of the person : then, the
 
 annual income
 
 of the estate for the term of years, which has been fixed on as the measure of the life: and, lastly, the consideration, whether the price of land be stationary or rising or falling in the country, and whether the fertility of the particular tract will be increased or diminished by the intermediate culture, or the like, so that the fee simple in possession will be intrinsically worth, when it shall fall in, as much as it is now, or more or less.
 

 In the most of Europe, and, perhaps, in some parts of this country, the annual income, received in the form of rent., may be anticipated almost as certainly as interest on
 
 *5
 
 capital m money. The price, also, of the fee in possession is much the same, take the country throughout, in the end, as at the beginning, of the same life. But, in all those particulars there is the utmost uncertainty here; an uncertainty so.great, that no general rule for estimating the value of those different interests can be laid down, which would not do great injustice in, perhaps, more than half the cases which might arise. The income from land is seldom divided by way of rent, but of crops from the cultivation of the owner; and hence, the profits depend much upon what-other capital the tenant has, besides the land. 'Those profits, for a course of years to come, cannot be computed with any confidence. Besides, it is á fallacy to assume, that the intrinsic value of the land, or the market value, will be the same at the beginning and end of the life estate. We know that depends bn such a variety of circumstances, that there can be no positive rule, A rice-swamp and other alluvial flats, being all cleared and prepared for successful culture, and of extraordinary fertility, may be so considered. But, in the hill country, and where tobacco or cotton are the crops, under the usual system ot tillage by the greater part of our citizens, or even of those who are called prudent and successful planters, we know that, in twenty-five or thirty years, a plantation of ordinary size is so nearly cleared of its timber, and reduced by continued and exhausting cropping and detrition, as often not to be worth half what it was. There is a material difference, in this respect, between different parts of the State, as they may be level or broken, and according to the different crops that are cultivated; and, also, as they may be healthy or unhealthy, and thus favorable to' long life, or .the reverse. Therefore, while we cannot say the rule adopted by the Master is right in this case, we do not see that it is not as unexceptionable as'any other, as a general
 
 *6
 
 «rule. Not being familiar'-With such subjects, and not having professional actuaries among us, we have, as far as opportunity -served, sought assistance from the opinions of sensible persons, conversant with the value of lands and -the modes here of-treating those under culture. We learn «that there have been but few sales of those'interests separately,'Unless under -the disadvantage of being under execution. Persons do not like to deal in them, on account of -•their uncertainty. Generally, when sales are decreed for ‘the purpose of partition in families, !the Widow has agreed to a sale of her dower with the inheritance, and !to take '•the interest on one third of the purchase money, or they have ftxed upon a gross sum for her, without being nice as to the amount, or adjusting it upon any known principle. ■'From such gentlemen as have known of such sales, or have ‘turned their thoughts to the subject, we get the impression -that, in this State, a reversion expectant upon the death of •a-healthy woman, in middle-life, and in ordinary circum"stances, is rated at ‘one-third of the whole dee. -But no "one -speaks W-ith confidence, as of his own experience, oí-as conveying what he deems a general opinion: for few ''have spent adhought on it. It has so happened in this •case, 'that the Master has hit on nearly the same proportion : which is, probably, as nigh the mark as any other •that coüld be laid down, Without particular evidence directed to this very land, and these persons. If, indeed, the ■ opinions of persons were taken, who are acquainted with 'the land, its topographical peculiarities, the course of husbandry, and the like, and the condition, age and health of Hhe tenant for life, we could not act on them with the assurance of doing the exact justice that Courts may, who 'have the aid of men Versed in the subject as a profession. ■But, as such opinions are the best lights accessible to us, 4they would govern us, if they had been offered. The par
 
 *7
 
 ties excepting have, however,- laid before us no evidence of the particular circumstances of this- land, — its. nature, probable annual value, the quantity, of wooded and' cleared land, the usual course-of cropping; the nature or-value of the-buildings,, or any-other-particular, nor-even the opinion oí any persons acquainted, with it — on which the Court might found some sort, of opinion on the allegation in the exception, “ that the- value fixed-' on the dower is unreasonably large.” — At the same time,.the party does: not ask for a further enquiry on the-subject,, as we-are-given to-understand, that, for- other reasons, a. decision of' the cause- at this term, is of' more importance to each of the claimants, than any sum that either could? gain upon this, point of the controversy. The object,, therefore,, of the exception is, to, obtain from the Court- a different valuation of these interests, upon a general principle, and without particular-evidence. I't must be seen, the Court cannot fix one. The exception does not question the duration, of the life- at 29 years, b.u(t merely complains of the result,, at which the Master has arrived, without showing-what ought to, have been the result, or by what process it should have been reached, and without any evidence to,aid us in the investigation. If these parties were tenants for life,, and rever-sioners, perhaps, the- best mode would be, to. say to them, let the values about which you dispute be tested by actual sale, as was finally done- by consent in
 
 Jones v Sherard.
 
 Then each could ta&e care of' his, own interest.. But here, the party,, who says the reversion is, valued too low, is an alien, and could not bid at the- sale, and) the reversioners are infants, who, also, could not bid, and whose interests might be sacrificed. Allowing, the life of the widow to be 29 years, and considering the want of capital here, and how few men would put out money, which was to come in again 29 years hence, in the form, of what is called a worn-out
 
 *8
 
 plantation, we think it as probable, as many persons might think, the Master has estimated the reversion too high, as too low. But we do not pretend to judge, for the reasons already given. And, as the parties do not ask for another reference on the point, but only for a decision of the Court upon the question in its present state, the exception must be overruled.
 

 The Master reports, that some of the title papers of the lands were lost by the burning of a house, in which they were deposited by the executor, and he deducts from the; estimated value of the land, the sum of $150 for the expense of supplying them. The Master has made this deduction without evidence of the actual expense, and wo think, without any ground in law. It does not appear that any expense has been incurred, nor is there any suggestion of any adverse claim, that is likely to disturb the present quiet possession of those claiming under the testator. But if there should be, we arc not aware that the expenses of the litigation, or of preparation for it, can be provided in this way. The third exception must, therefore, be allowed; and the accounts must be corrected accordingly. When so corrected, the report will be confirmed, and a decree be entered in conformity to it.
 

 Per Cum am, Decreed accordingly.