ROSA J. BRYAN et al. v. EMMA V. MORING et als.

*Wills—Devisavit vel non—Evidence.*

1. Where, upon an issue of *devisavit vel non*, the jury found a certain script to be the will, and the Judge ordered that the finding of the jury, together with a copy of the judgment, should be certified to the Clerk of the Superior Court,

in order that he might proceed, &c.; *It was held*, to be informal. In such case, the probate is in the verdict, and the judgment so declaring, should direct the remission of the transcript in which the script is contained, with the original script, if among the papers, to the end that they may be recorded and filed, and other necessary proceedings had.

2. Where, in an issue of *devisavit vel non*, the caveators offered a witness who had been examined when the will was offered for probate before the Clerk, and to impeach him, and contradict his testimony, the propounders examined a witness who had made *memoranda* of the evidence taken before the Clerk, at the request of the Clerk, and who swore that his *memoranda* were accurate; *It was held*, to be error to exclude such *memoranda*, and the propounders had a right to read it to the jury to contradict the caveator's witness.

3. In such case, it does not remove the error to allow the caveator's witness to testify from memory what his evidence was before the Clerk. The propounders had a right to have that evidence, as preserved, read to the jury rather than to have the result of the witnesses recollection.

(*McNeill* v. *McNeill*, 2 Dev., 393; *State* v. *Pierce*, 91 N. C., 606; *Davenport* v. *McKee*, 94 N. C., 325, cited and approved).

ISSUE OF *devisavit vel non*, tried before *Gilmer, Judge*, and a jury, at Fall Term, 1885, of the Superior Court of CHATHAM county.

The propounders, the plaintiffs of record, appealed.

The facts appear in the opinion.

*Messrs. F. H. Busbee* and *R. H. Battle, (Messrs. Samuel F. Mordecai* and *C. M. Busbee*, were with them on the brief), for the plaintiffs.

*Messrs. John W. Graham* and *John Manning (Messrs. T. C. Fuller, Geo. H. Snow* and *Thos. Ruffin*, were with them on the brief), for the defendants.

SMITH, C. J.   A paper writing, purporting to be the will of William C. Faucette, who died in June, 1883, was shortly thereafter produced before the Clerk of the Superior Court of Chatham county, at his office, by Elias H. Bryan, and Rosa J., his wife, and upon the written examination of witnesses, admitted to probate in common form, as his holographic will, and letters of administration *cum. testamento annexo*, issued to the propounder.   It was in form as follows:

NORTH CAROLINA, }
  CHATHAM COUNTY. }

"I, William C. Faucette, of said county and State, being sound in body and mind, do make and declare this my last will and testament, in manner and form following—that is to say, I will that my executors first pay all necessary funeral expenses, and all just debts that I may owe at my death; if I should leave a wife and child or children surviving me, then I wish my widow to have one-third of all my estate, real and personal, and the other two-thirds to such child or children as may survive me.

"If I should leave a child or children and no wife, then I give all my estate to such child or children.

"If I should leave a widow and no child, then I will that my estate be equally divided between such widow, my sister Sally A. Faucette and my brother Henry C. Faucette, one-third to each. If I should leave no child or widow surviving, then I give all my estate to my sister Sally A. Faucette and my said brother Henry C. Faucette, one-half to each; and if either my sister Sally A., or brother Henry C., should die without children, then I wish his or her part to go to the survivor.

"Witness my hand and seal this 21st July, 1879.

WILLIAM C. FAUCETTE. (Seal)."

To the probate, a caveat was entered by Emma V. Moring, her husband, John M. Moring, uniting with her, early in December thereafter, and in May of the next year, she, the said Emma, and her children, by their said father and next friend, propounded for probate, and proposed to establish, a later holographic will of the said William C. Faucette, alleged to have been lost, and the substance of which is set out in their complaint. The said John M. was subsequently appointed guardian to said infants, to defend their interests in the action. To prevent the double controversy, an issue in the alternative was framed and submitted to the jury, as follows:

"Is the paper writing, dated July 21st, 1879, or any part thereof, the last will and testament of W. C. Faucette; or does the paper marked A, contain the substance of a holograph will, duly executed by W. C. Faucette and dated July 12th, 1880?"

Upon the rendition of the verdict, judgment was entered as follows:

"The jury having found the following paper writing, marked A, to-wit:

"STATE OF NORTH CAROLINA, }
          CHATHAM COUNTY.              }

I, William C. Faucette, of said county and State, being sound in mind and body, do make and declare this my last will and testament, in manner and form following: That is to say, first pay all my funeral expenses and claims, and other claims. At my death, should I leave wife, child or children, then I wish my widow to have one-third of my estate, both real and personal, and the other to my child or children; but should I leave no wife, child or children, then I will all my estate, both real and personal, to cousin Emma Moring and children.

This the 12th day of July, 1880.

                                        W. C. FAUCETTE, [Seal.]

contained in substance the last will and testament of W. C. Faucette, deceased.

"It is now on motion of, &c., (omitting names of attorneys), adjudged, that the finding of the jury, together with a copy of this judgment, be certified to the Clerk of the Superior Court of Chatham county, with instructions that he proceed as the law directs, and in accordance with the finding of the jury and this judgment, to admit to probate the paper writing, found by the jury and hereinbefore set forth, as and for the last will and testament of W. C. Faucette, deceased, and that he proceed in other respects as the law directs.

Ordered, that the defendants Emma V. Moring and others named, E. H. Bryan and wife, Rosa J., pay costs of this proceeeding.

JOHN A. GILMER,
Judge presiding."

In this connection, it may not be amiss to observe, in order to prevent the adoption of the foregoing form of judgment as an approved precedent, that in such case, the *probate is in the verdict*, and the judgment so declaring, should direct the remission of the transcript, in which the last script is contained, (with the original script, if there be one among the papers,) to the Probate Court, to the end that they be recorded and filed, and other necessary proceedings had therein. A precedent is found in Eaton's Forms, 444, 448; *McNeill* v. *McNeill,* 2 Dev., 393.

During the trial, one James E. Bryan, a witness for the caveators, a term used to designate those who, as parties, resist the probate of the first, and offer for probate the copy of the later lost script, testified to matters material to the issue, such as the search for and finding the place of deposit of both scripts; their being both in the handwriting of the deceased, and other facts in detail relating thereto, which will be found in his evidence, but are not necessary to be specifically recited in order to an understanding of the exception of the appellants which we propose to consider.

The propounders, (those who offer the first script being intended in using the word), then introduced T. B. Womack, of counsel for the caveators, to whom was handed the testimony taken for the caveators in the *ex parte* probate before the Clerk, among which was that of the said James E. Bryan, and the witness stated:

"I was not of counsel for Moring, when the effort was made to propound the will of 1880, before the Clerk, May 18th, 1885. I was requested by the Clerk to take down the testimony, and did so by consent of counsel. I took down the substance of the

evidence of J. E. Bryan, and this paper contains everything of importance testified to by him, omitting repetition merely, and it is in the main correct. It contains the substance of his evidence accurately. The evidence as taken was not signed by the witness, nor am I sure that it was read to him."

The propounders then proposed to read this evidence to the jury, to impeach the testimony now delivered by Bryan, as we must understand the record, and especially as the testimony was allowed when recalled to the memory of the witness, without opposition, and it was only competent for such purpose. The caveators objected to the reading, and it was disallowed by the Court, and to this ruling the propounders except.

The witness having stated that he could recollect the substance of Bryan's testimony as to what occurred at the store, proceeded to say that the latter testified that neither Mrs. Everett Bryan nor Wilkie, read or saw the contents of the paper handed to Elias Bryan, (the alleged will of 1880).

Upon cross-examination the witness said further, that he could give a synopsis of the testimony of J. E. Bryan from his recollection, but not the substance of all he said, as there were a good many pages of his testimony; that Bryan testified to the search; that he found the will of 1880, with the will of 1879, in the lower room, with the bank stock; that the handwriting was W. C. Faucette's, and that the substance of the contents of the will was the same as testified to upon the present trial; and also that the will was upon note paper, on the first page, and half of the second; and gave similar testimony as to the indictment for counterfeiting.

It will thus be seen, that while the carefully-written memorandum of the words as they came from the lips of the examined witness, J. E. Bryan, or Everett Bryan, as he was sometimes called, by an impartial and intelligent person, who swears that "it contains the substance of his evidence accurately," is excluded, the witness is permitted to reproduce it from memory, so that the opposition was not to the competency, but the means of obtaining the former evidence; in other words, though the

correctness of what was committed to writing at the time is not questioned, it is refused, and the witness allowed to speak from a refreshed memory.   In this ruling we think there is error, and that the writing thus verified was impeaching evidence, which ought to have been heard.   It is not offered as independent and original evidence, but in aid of other proof of bad character, and affecting the credibility of the witness.   The *memorandum* thus identified and supported, *becomes part of the testimony of the witness*, just as if without it, the witness had orally repeated the words from memory.   The present case falls within the ruling in *State* v. *Pierce*, 91 N. C., 606, when the Court say:   "The purpose here is not to prove any facts sworn to, but what were the declarations made by the witness; what did she then say— what was her version of the matter.   *What higher proof could be had, than her very words, written down as they were uttered, with care, and under a sense of official obligation?*"   We shall not reëxamine the proposition, but simply refer to the opinion in that case.

It does not remove the error, to say, that the witness did, from memory, recall and repeat the testimony.   The propounders had a right to have that evidence, as preserved, read to the jury, rather than have the result of an awakened, and perhaps imperfect memory, in which there might be omissions of importance bearing upon the case.   The witness himself says, he could from memory give a synopsis, "but *not the substance* of all he said, as there were a good many pages of his testimony."   Why, then, was excluded a memorandum which was full and complete, written down at the time, and the exercise of an imperfect memory of what was said resorted to instead?

We refer again to what was said in the opinion in *Davenport* v. *McKee, ante,* 325, upon a similar exception.

Without noting other exceptions, that taken to the ruling under consideration must be sustained, and this results in the right to another trial.

There is error.   Let this be certified.

Error.                                                    Reversed.