TRUST CO. v. BENBOW.

(Filed May 3, 1904).

1. DOCUMENTARY EVIDENCE — *Evidence—Supplementary Proceedings—Waiver—Exceptions and Objections.*

Where a plaintiff introduced in evidence the entire record in supplementary proceedings, it thereby waived its exception to the previous exclusion of parts of such record objected to as being fragmentary.

2. DOCUMENTARY EVIDENCE—*Evidence—Competency.*

The fact that a letter was dictated by one member of a firm and the firm name signed by the other member of the firm does not sufficiently identify it to make it admissible in evidence.

3. DOCUMENTARY EVIDENCE—*Evidence—Competency.*

A letter by a third person giving the substance of a conversation with the defendant is not competent evidence as against the defendant.

4. NEGOTIABLE INSTRUMENTS—*Consideration—Husband and Wife—Dower.*

   The release of a dower by a wife is a valuable consideration for a note executed by her husband to her.

5. FRAUDULENT CONVEYANCES—*Negotiable Instruments—Consideration—Questions for Jury—Husband and Wife.*

   Whether the consideration for a note transferred by a husband to his wife was adequate, was a question of fact for the jury and could not be considered on appeal.

   CLARK, C. J., and MONTGOMERY, J., dissenting.

On petition for rehearing. For former opinion, see 131 N. C., 413.

*J. T. Morehead* and *King & Kimball,* for the petitioners.
*L. M. Scott, E. K. Bryan, Rountree & Carr* and *Jno. N. Wilson,* in opposition.

DOUGLAS, J. This case is now before us on a petition to rehear. After the most careful consideration we are forced to the opinion that the petition should be allowed and the judgment of the Court below affirmed, as we find no substantial error in the record. We do not think it necessary to discuss any exceptions other than those decided in the former opinion. (131 N. C., 413). The plaintiff offered to read in evidence certain parts of the testimony of D. W. C. Benbow and of the statement of Mrs. Mary E. Benbow given in supplementary proceedings. Upon objection by the defendants, this testimony was excluded by the Court as being fragmentary. The plaintiff then, reserving his exceptions, introduced in evidence the entire record in the supplementary proceedings. Even if the evidence as originally offered had been competent, and therefore improperly excluded, a question we do not find it necessary to decide, the plaintiff waived

his right of exception by introducing the entire record, which of course included the part previously offered.  If he wished to take advantage of his exception, he should have relied upon it and not have sought the inconsistent benefits of having his evidence before the jury and the right to a new trial on account of its previous exclusion if it failed of its desired effect.  In other words, he should not have the benefit of both its exclusion and admission at the same time.  This point has been expressly decided in *Cheek v. Lumber Co.,* 134 N. C., 225.  We see no essential difference between such a case and the effect of introducing testimony after a demurrer to the evidence had been overruled, which is held to be a waiver of the exception.  In both cases substantial justice seems to require that a party should either rely on his exception or abandon it.  This was the rule in both the State and Federal courts before the passage of the so-called Hinsdale Act (Laws 1897, chapter 109, amended by Laws, 1899, chapter 131) and rests equally upon reason and authority.  *Purnell v. Railroad,* 122 N. C., 832; *Cox v. Railroad,* 123 N. C., 604; *Gales v. Max,* 125 N. C., 139; *Railway v. Daniels,* 152 U. S., 684; *Runkle v. Burnham,* 153 U. S., 216.

Another exception of the plaintiff was to the exclusion of certain letters written by R. R. King to certain of Benbow's creditors.  King testified that he had no recollection of writing the letters nor of anything therein contained, and that the letters did not refresh his memory in the slightest degree.  After examining the letters, all that he was willing to say was that one of them was in his handwriting, and the others, typewritten and signed by Mr. Kimball in the name of the firm, were probably dictated by him, as he had personal charge of those matters of litigation.  He further testified, in substance, in answer to repeated questions, that he always tried to tell the truth, and that he would not have stated in

135——20

those letters anything that at the time he did not believe to be true.

In no view of the case could any of the letters, other than that in King's handwriting, be competent against any of the defendants. They are typewritten and signed by Kimball. King *thinks* he dictated them, but has no recollection of doing so. Even if that fact were established, there is no evidence that the letters were correctly transcribed or that they were ever seen by King after they were written. The fact that they were not signed by him would tend to show that they were written and mailed in his absence. If he had read them over, he would probably have signed them. We do not think there was such identification of the papers themselves as is absolutely essential for their introduction under any circumstances.

Mr. King's autograph letter is sufficiently identified as the original paper, but we think that it is otherwise incompetent. It does not profess to give Dr. Benbow's exact language, nor in fact does it repeat the conversation at all. It does not pretend to contain the entire conversation between Mr. King and Dr. Benbow, or any substantial part thereof, but simply states in the writer's own language as the result of their conversation that Dr. Benbow said he wanted to pay certain notes, and to have them sent to Greensboro for that purpose. Mr. King testified that he had a great many conversations with Dr. Benbow, and it is evident that these letters were never intended to contain a record of the numerous conversations, but merely to state such isolated parts thereof or conclusions therefrom as were necessary to the immediate correspondence. This clearly takes the letters out of the rule laid down in 1 Greenleaf, section 439, *a* and *b,* even if we were inclined to carry the principle to the full extent covered by the wording of the section. The author cites but three cases from this State, *Green v. Cawthorn,* 15 N. C., 409;

*State v. Lyon,* 89 N. C., 568; and *Bryan v. Moring,* 94 N. C., 687. The first case involved no writing whatever, but merely held that "where A communicated to B a statement made to him by C, and upon his examination could not recollect its substance, C is a competent witness to prove it." There each witness testified to his personal recollection. In Lyon's case the witness was permitted to examine an alleged libelous article in a newspaper, not to prove the truth of its contents, but to refresh his recollection as to whether he had seen it. In that case the Court says, on page 571: "It is not necessary that the mind should be able to recall the distinct facts, when the witness has such assurance of them as enables him to testify. Among the classes into which Mr. Greenleaf distributed this species of evidence, is one in which the witness fails to recognize the writing, nor does it awaken his memory; yet, knowing the writing to be genuine, his mind is so convinced as to be enabled thereby to swear positively to the fact." (Citing 1 Greenleaf Ev., section 437). In turning to the section of Greenleaf then relied upon by the Court, we find that it is omitted by his progressive editor from the latest edition of the work that bears his name, and relegated to the appendix as being out of date. What Professor Greenleaf himself said is as follows: "Where the writing in question neither is recognized by the witness as one which he remembers to have before seen, nor awakens his memory to the recollection of anything contained in it, but, nevertheless, knowing the writing to be genuine, his mind is so *convinced* that he is on that ground *enabled to swear positively as to the fact.*" The italics are ours, and we are compelled to say do not seem to us to mirror the condition of the witness' mind upon the letters in question.

In *Bryan v. Moring,* the witness, referring to the paper offered in evidence, which was the testimony taken down by him in the *ex-parte* probate of the will before the Clerk, testi-

fied that: "I was requested by the Clerk to take down the testimony, and did so by consent of counsel. I took down the substance of the evidence of J. E. Bryan, and this paper contains everything of importance testified to by him, omitting repetition merely, and is in the main correct. It contains the substance of his evidence accurately." In that case the evidence was taken down for the express purpose of preserving it, and the writer testified that it contained accurately the substance of *all* that was said. It was admitted as impeaching testimony.

In *State v. Pierce,* 91 N. C., 606, the written papers, offered only as impeaching evidence, were the written examinations of the impeached witness before the coroner and committing magistrate, both of whom fully identified the papers. *State v. Jordan,* 110 N. C., 491, also referred to the written examination of a witness taken down by the committing magistrate and offered at the trial to impeach the witness.

In *Bank v. Fidelity Co.,* 128 N. C., 366, 83 Am. St. Rep., 682, the question is thus stated in the opinion of the Court on page 369: "The first assignment of error cannot be sustained. The admitted paper was a memorandum of the examination of the defendant Mehegan before a committee of the board of directors of the plaintiff bank and taken down by the witness Davis, who testified as follows: "Mehegan was present before the committee; he was examined; his examination was put in writing. I read every sentence to Mehegan as Mr. Fountain propounded the question; *then I wrote down Mehegan's answer.* I read the questions and answers as they were made, and he said that they were correct. *The entire paper is in my hand-writing.* Then read the whole over to Mehegan. He never refused to sign, never was asked to sign it." Under such circumstances, we think the paper was admissible as part of the testimony of Davis, with whose credibility, of course, its own was involved. This

case comes nearer to that at bar than any other of which we are aware, but its bare statement shows its essential points of difference. It contained *all* of Mehegan's testimony which was reduced to writing for the purpose of preservation, while the witness by whom it was proved clearly remembered the transaction and testified to its attendant circumstances. Moreover, Mehegan was not only a party to the action, but was the principal on the bond upon which the action was brought, against whom lay the primary right of recovery with the right of exoneration in his co-defendant. None of these conditions exist in the case at bar. While Dr. Benbow was perhaps a proper party, the only substantial recovery is sought against Charles D. Benbow personally and as executor of his mother. Against him, under the circumstances of this case, we do not think that the admissions of Dr. Benbow would be competent, even if properly shown.

One very serious, if not insurmountable, objection to the admission of any writing of which the witness has no recollection whatever, and which does not at all refresh his memory, is that it deprives the adverse party of all benefit of his legal right of cross-examination. The right to ask questions is worthless without the power to elicit answers. Where the witness remembers nothing the paper itself becomes the witness, and is protected by its inanimate nature from the utmost skill of the cross-examiner. Cross-examination, while frequently used to discredit a witness, is by no means confined to that purpose. Indeed, its general as well as most useful purpose is to bring out the statements and circumstances attending and qualifying the evidence in chief, the force of which is in this way frequently destroyed without attacking the credibility of the witness. This Court has said in *Howe v. Rea*, 75 N. C., 326, that evidence should be "authenticated by the two great tests of truth, an oath and a cross-examination."

The remaining question is whether there is any evidence of a valuable consideration for the transfer of the Fisher note from Dr. Benbow to his wife. He testifies that he transferred it to her as part payment on his note for $15,000 then held by her. This involves the question whether there was any valuable consideration for the latter note. Aside from the validity of a gift by one who has no debts, and the meritorious consideration of a promise to repay to a faithful wife the money her father gave her, which is not before us, we think that the release of her right of dower involved in signing the mortgages for fifty thousand dollars was a valuable consideration. Upon a careful reconsideration of the case we think that there is evidence tending to prove that Mrs. Benbow signed the mortgages in consideration of her husband's promise of a home. Aside from her verified answer in the record introduced by the plaintiff, a reasonable construction of her statement, viewed in the light most favorable to her, *tends* to prove the fact.

As there is no question as to the admissibility of the evidence, all that we can pass on is its probative *tendency,* its probative *force* being for the consideration of the jury alone. It is well settled that the inchoate right of dower is a valuable right, possessing the elements of property, and that its relinquishment constitutes a valuable consideration. 10 Am. & Eng. Ency. (2 Ed.), 142, 2 Kerr on Real Property, section 914; 2 Scribner on Dower, pages 7, 8.

In *Bullard v. Briggs,* 7 Pick., 533, 19 Am. Dec., 296, "A husband mortgages his land, and in consideration of his wife's releasing her right of dower to the mortgagee conveys the equity of redemption to a stranger in fee for the benefit of the wife, but by a deed containing no declaration of the trust and purporting to be for the consideration of a sum of money paid by the grantee: *Held,* as against creditors of the husband, that the relinquishment of the right of dower

was a valid consideration for the conveyance of the equity of redemption; that parol evidence was admissible to show that it was the true consideration; that if the transaction was honest and the right of dower equivalent in value to the equity of redemption the conveyance was valid.'

In that case the Court says, on page 538: "The consideration for this intended settlement on the wife was her right of dower in the estate which the husband was about to mortgage. Without her relinquishment he could not raise the money wanted for his support and his debts. His days were numbered by intemperance and disease. Though she had no actual estate in the dower during the life of her husband, yet she had an interest and a right of which she could not be divested but by her consent or crime, or her dying before her husband. It was a valuable interest, which is frequently the subject of contract and bargain; it was an interest which the law recognizes as the subject of conveyance by fine in England, and by deed with us. It is more or less valuable according to the relative ages, constitutions and habits of the husband and wife. It is more than a possibility, and may well be denominated a contingent interest."

In *Wheeler v. Kirtland*, 27 N. J. Eq., 534, the Court says, on page 535: "The character of inchoate dower has been the subject of much contrariety of opinion. It is said not to be an estate. It is not the subject of grant. It cannot be taken upon execution. Equity will not apply it to the satisfaction of the debts of the wife. As dower was a humane provision for the sustenance of the widow and younger children, some limit was imposed on the power to defeat its consummation. Yet, while not technically an estate, it cannot, at this day, be denied that inchoate dower is a valuable interest in land. It is an interest which the courts have repeatedly recognized. Its presence works a breach of the covenants against encumbrances. *Carter v.*

*Denman,* 3 Zab., 260. Its relinquishment is a valuable con-sideration to support a conveyance by her husband to her against his creditors (*Wright v. Stanard,* 2 Brock., 311); or a promissory note given by a purchaser. *Nims v. Bigelow,* 45 N. H., 343."

In *Farwell v. Johnston,* 34 Mich., 342, the Court says, on page 344: "The objection, for want of consideration, is with-out foundation. It has always been held that a release by a wife of an interest which was within her own option to release or not—as, for example, a right of dower—is a valuable consideration, which will support a post-nuptial set-tlement, and therefore will suffice for any other purpose. This is elementary law, and was never disputed."

In *Gwathmey v. Pearce,* 74 N. C., 398, the entire opinion of this Court is as follows: "Where a wife conveys her separate property to secure a debt of her husband's, the rela-tion which she sustains to the transaction is that of surety." *Purvis v. Carstarphen,* 73 N. C., 575.

· Here the wife joined her husband in the conveyance of his land in trust to pay his debt, in which land she had, under our dower statute, a vested right to dower, to be allotted after her husband's death; and she joined in the deed for the purpose of binding her dower. After her husband's death the whole land, her dower included, was sold under the trust deed to pay the debt. This made the wife a creditor of her husband's estate to the amount of the value of her dower in the land. This is the only point in this case. And it was rightly decided by his Honor.

In *Gore v. Townsend,* 105 N. C., 228, 8 L. R. A., 443, this Court, in a learned and elaborate opinion by *Justice Avery,* held that a wife's inchoate right of dower has a pres-ent value as property, and that when she encumbers it by joining with her husband in a mortgage to secure his debt

she becomes his surety, and as such is entitled to exoneration.

It is urged here that Dr. Benbow's note for $15,000 represented an amount greatly in excess of the value of Mrs. Benbow's right of dower in the lands covered by the mortgages signed by her. This may be true, but we have neither the right nor the means to find such a fact. All that we can say is that there was competent evidence tending to prove a *valuable* consideration. Whether the consideration was *adequate* was a question of fact for the determination of the jury. In this connection we can perhaps do no better than to quote the words of *Chief Justice Marshall,* in *Wright v. Standard,* 2 Brock., 311, 315, as follows: "The first is the difference between the value of the dower which has been relinquished and the property which has been settled in compensation for that dower. The Court has already said that this difference, if the conveyance be made with a real intent to pass the property, does not of itself vitiate the deed in a court of law. If the value of the dower had been a few dollars or cents less than the value of the property conveyed in satisfaction of it, no person would suppose the deed to be a nullity on that account. And if a small difference of value would not avoid it, what is the difference that will? Where does the law stop? The difference may be so great as to satisfy the conscience of the jury that the conveyance is intended to cover the property from the just claims of creditors; but as a mere question of law I can find nothing in the books which will justify a court in saying that a deed, otherwise unexceptionable, is void because the consideration is of less value than the property conveyed."

Our attenton has not been called to any evidence as to the value of the mortgaged property, and there is no such legal presumption. As a matter of experience we all know that the loan rarely exceeds two-thirds of the value of the

security, and is generally much less.   If in the case at bar the inequality were so great as to suggest the element of fraud, it should have been presented to the jury in the Court below; but cannot be considered here in the face of their verdict.

In the absence of substantial error in the trial below, we have come to the conclusion that the petition must be allowed and the judgment affirmed.

Petition allowed.

MONTGOMERY, J., dissenting.   I dissent in this case from the opinion of the Court, but do not. deem. it necessary to write anything further than to refer to the opinion of the Court written by me in the case as reported in 131 N. C., 413.

CLARK, C. J., concurs in the dissenting opinion.