BOARD OF TRADE OF CITY OF CHICAGO v. WESTON.

In re GLAVIN.

(Circuit Court of Appeals, Seventh Circuit. April 10, 1917.)

No. 2396.

1. BANKRUPTCY ⬦⟹3—STATUTORY PROVISIONS—VALIDITY.
    Assuming that Congress, in passing a bankruptcy law, is without power to define property, or to declare what elements must be present to make property, Bankr. Act July 1, 1898, c. 541, § 70a, 30 Stat. 565 (Comp. St. 1916, § 9654), providing that the trustee shall be vested by operation of the law with the title of the bankrupt to all property which the bankrupt could by any means have transferred, or which might have been sold under judicial process against him, does not attempt to make property out of things which are not such, but enumerates property having certain characteristics as subjects of devolution and administration in bankruptcy.

2. BANKRUPTCY ⬦⟹143(4)—PROPERTY PASSING TO TRUSTEE—MEMBERSHIP IN BOARD OF TRADE.
    The rules of a Board of Trade provided for the suspension and reinstatement of members for failure to comply with business operations, or with any award under the rules and regulations of such Board, and provided that all applications for membership should be referred to a committee, and that any male person of good character and credit and of legal age might be admitted to membership upon approval by the board of directors, and upon the payment of an initiation fee of $10,000, or on presentation of an unimpaired or unforfeited membership, duly transferred, and by signing an agreement to abide by the rules of the Board, and that every member should be entitled to receive a certificate of membership, and if he had paid all assessments due, and had against him no outstanding unadjusted, or unsettled claims or contracts held by members of the association, and the membership was not in any way impaired or

'forfeited, it should, upon payment of $100, be transferable on the books of the association to any person eligible to membership, and approved by the board of directors. *Held*, that a membership in such Board of Trade, having a value of about $4,000, was property passing to the member's trustee in bankruptcy, under Bankr. Act, § 70a, though other members of the Board of Trade held outstanding, unadjusted, and unsettled claims against him, aggregating about $35,000, and protested or objected against the transfer of his membership.

3. BANKRUPTCY ☞305—PROCEEDINGS BY OR AGAINST TRUSTEE—DECREE.

In a decree adjudging that such membership was property, and that the right, title, and interest of the bankrupt had passed to the trustee, a provision that, in order to enable the trustee to sell and dispose of such membership for the benefit of the estate, the Board of Trade should issue to him, as trustee, a membership certificate, was not objectionable, as giving the trustee membership, regardless of the rules of the Board as to membership, as it was merely intended to invest the trustee with membership for the purposes of sale, and his membership would not carry with it the privileges ordinarily inherent in such a membership.

Appeal from the District Court of the United States for the Eastern District of Wisconsin; F. A. Geiger, Judge.

In the matter of Charles F. Glavin, bankrupt. From a decree in favor of Thomas C. Weston, trustee, the Board of Trade of the City of Chicago appeals. Affirmed.

The following is the statement and opinion of Geiger, District Judge, in the lower court:

The bankrupt held a membership or seat in the Board of Trade of the City of Chicago. Its value is conceded to be about $4,000. Weston, trustee in bankruptcy, has filed a petition, asserting his succession to Glavin in and to said membership as property or a property right, and asking recognition thereof by the Board of Trade. The latter resists, on the ground that such membership or seat does not pass to a bankruptcy trustee. The jurisdiction of the court over the Board of Trade has been conceded, and, as I understand, no exception is taken to the procedure; the parties being desirous of litigating and obtaining an adjudication upon the merits of the question presented. There are no facts in dispute.

The respondent, Board of Trade, is a body corporate, by virtue of a special charter granted by the Illinois Legislature in 1859 (Priv. Laws 1859, p. 13), to enable its grantees and their associates and successors to establish and maintain a grain market in Chicago. It is empowered by such charter to admit or expel members in the "manner to be prescribed by the rules, regulations, and by-laws thereof." Among rules so in fact adopted and in force during the bankrupt's membership, and at the time of adjudication (it is admitted that at the date of adjudication the bankrupt was a member in good standing), are these:

Rule 4, Section 7: "When any member of this association has been duly convicted of failure to comply with the terms of any business obligation, or with the award of any committee of arbitration or committee of appeals, made in conformity with the rules and regulations of this association, he shall be suspended from all privileges of the Board of Trade of the City of Chicago until all his outstanding obligations to members of said Board of Trade shall have been settled, when he may, upon application to the board of directors, and upon stating under oath that he has settled all such outstanding obligations, be reinstated. Notice of all applications for reinstatement shall be posted upon a properly designated bulletin in the Exchange Hall for at least fifteen (15) days prior to the hearing of such application by the board of directors."

"Such reinstatement shall be a bar to any further discipline by the board of directors of the said Board of Trade on account of claims against such member maturing prior to his reinstatement."

Rule 10, Section 1: "All applications for membership in the association shall be referred to the committee on membership, who shall hold regular stated meetings for examining such applicants and their sponsors in person, under such rules and regulations as may be made by the board of directors. Any male person of good character and credit, and of legal age, on presenting a written application, indorsed by two members, and stating the name and business avocation of the applicant, after ten days' notice of such application shall have been posted on the bulletin of the Exchange, may be admitted to membership upon approval by at least ten (10) affirmative ballot votes of the board of directors: Provided, that three negative ballot votes are not cast against such applicant, and upon the payment of an initiation fee of ten thousand dollars, or on presentation of an unimpaired or unforfeited membership, duly transferred, and by signing an agreement to abide by the rules, regulations, and by-laws of the association and all amendments that may be made thereto."

Section 2: "Every member shall be entitled to receive a certificate of membership, bearing the corporate seal of the association and the signatures of the president and secretary; and if the member in whose name said certificate stands has paid all assessments due, and has against him no outstanding, unadjusted or unsettled claims or contracts held by members of the association, and said membership is not in any way impaired or forfeited, it shall, upon the payment of one hundred dollars ($100), be transferable on the books of the association to any person eligible to membership who may be approved by the board of directors, after due notice, by posting, as provided in section 1 of this rule. The membership of a deceased member shall be transferable on the books in like manner, by his legal representative. Prior to the transfer of any membership, application for such transfer shall be posted upon the bulletin of the Exchange for at least ten days, when, if no objection is made, it shall be assumed the member has no outstanding claims against him."

These are the only rules pertinent to the question presented. No rule exists giving to the respondent or its members the right to compel sale or other disposition of memberships, to pay debts of particular members, or reserving to respondent or its members any right of application of a membership against the will of a member, for the benefit of his creditors. Certain members of respondent, creditors of the bankrupt, who held "outstanding, unadjusted, and unsettled claims" (see rule above) against him arising out of Board transactions, and which claims aggregate about $35,000, have filed such claims with respondent, and with the same their objections or protest against the transfer of the bankrupt's membership. The claims are valid. Each of such creditors, save one, has also filed his claim in these bankruptcy proceedings. They, however, filed these claims, with a reservation of any rights possessed by them as members of the respondent, under the rules above quoted.

The Bankruptcy Act (Section 70a) declares that a trustee "shall * * * be vested by operation of law with the title of the bankrupt" as of the date of adjudication, to all (1) property which prior to the filing of the petition he (the bankrupt) could by any means have transferred, or (2) which might have been levied upon and sold under judicial process against him. It may be taken for granted that, upon general principles, as well as upon the construction given by the Illinois courts to its charter, a seat or membership in the respondent Board of Trade is not property such as is ordinarily subject to levy, or to other compulsory process. But is it property which is the subject, by any means, of transfer by the bankrupt? Now, in arguing a negative answer to this, it is suggested by counsel, among other things, that the constitutional authority to enact bankruptcy laws must be exercised subordinately to the power of states to regulate intrastate commerce; that it is no part of such legislation "to create property or to * * * declare the limits of property"; that the authority is limited to providing for a distribution of what is otherwise property; again, that "the right to declare what shall, within the statute, be deemed property, and what shall be the qualities and elements constituting that property, as respects any particular subject-matter, is essentially a part of the right to regulate intrastate commerce, and is ex-

clusively the right of the state. Congress may not, under its power to enact a bankruptcy law, or any other of its powers, interfere with this state right to define what shall be property or what shall be the elements of property. * * * Property, when rightly understood, contains the elements of exclusiveness, or exclusion. It consists of several elements—the right to use, the right to sell, etc."

[1] These suggestions, it seems to me, are hardly pertinent to the question presented. It may be that Congress, in discharging its constitutional authority, either in passing a bankruptcy law or otherwise, is without power to define "property"—in the broad sense—by declaring what elements must be present to make property. But I conceive that nothing of the kind has been attempted. Section 70a is merely a declaration, by way of enumeration or schedule, of the rights, privileges, or things which, being possessed or enjoyed by a bankrupt, and being property, shall, as respects their title, devolve, by operation of law, upon a trustee. It deals with property, as such. Instead of attempting to make property out of things which are not such, it enumerates, as subjects of devolution and administration in bankruptcy, property having certain characteristics, and therefore, being an enumeration of certain classes of property, is on its face a limitation within the larger field of property in general. It does not say that, in addition to a bankrupt's property, certain other rights, privileges, or things shall be deemed property, and shall vest in the trustee. Obviously, rights of a bankrupt which attach to him personally, such as the ordinary rights incident to his life, his liberty, or pursuit of happiness, valuable though they may be, could not be declared to pass to the trustee, because they are neither property nor property rights. Probably they could be declared such by neither national nor state legislative action. Those rights, as well as property and property rights subject to appropriation, exist and are recognized, respectively, under fundamental constitutional tests. Now, it would be strange if the dominant grant to Congress to legislate upon bankruptcy and insolvency, and which, when exercised, supersedes state legislation respecting these matters, should nevertheless be subordinate to the right of each state to determine what is or shall be property, subject to the terms of the Bankruptcy Act. But, as indicated, the case here presents no such broad question that need be considered to answer, first, whether the membership in the respondent Board is property in the ordinary sense upon application of ordinary tests—the very tests suggested by its counsel—nor to answer specifically whether it is property falling within any of the categories of section 70a.

[2] The rules of the Board of Trade, when read in the light of adjudicated cases dealing with section 70a, answer both of these questions; and in my judgment Page v. Edmunds, 187 U. S. 596, 23 Sup. Ct. 200, 47 L. Ed. 318, meets the present situation so fully that extended reference to other adjudications—e. g., Re Neimann (E. D. Wis., D. C.) 124 Fed. 738; Re Hurlbutt-Hatch Co., 135 Fed. 504, 68 C. C. A. 216 (C. C. A. 2d Ct.); O'Dell v. Boyden, 150 Fed. 731, 80 C. C. A. 397 (C. C. A. 6th Ct.); Re Gregory, 174 Fed. 629, 98 C. C. A. 383, 27 L. R. A. (N. S.) 613 (C. C. A., N. Y.); Re Currie, 185 Fed. 263, 107 C. C. A. 369—is unnecessary. That case presented a contest between a member of the Philadelphia Stock Exchange and his trustee in bankruptcy. The seat or membership had not been scheduled, but the trustee, after causing it to be appraised, petitioned the referee for an order of sale. The bankrupt opposed, claiming that the membership was not an asset. The rules of that Exchange in respect of election to, maintenance, transfer, forfeiting, suspension, or termination of membership, were much like those before us. They provided for suspension in the event of bankruptcy, for reinstatement upon a discharge from debts; for the sale under certain conditions of a deceased member's seat for the benefit of any creditor, fellow members, and certain other contingencies affecting such membership. Now, without giving here the detailed contentions respecting a possible exemption of the membership under the Pennsylvania laws, the Supreme Court, in dealing directly with the question whether the membership was property under section 70a, used this language: "We think it could have been transferred within the meaning of the statute. The appellant could have sold his membership, the purchaser taking it subject to

election by the Exchange and some other conditions. It had decided value. The appellant paid for it, in 1880, $5,500, and he testified that the last price he had heard paid for a seat was $8,500. One or the other of these sums, or at any rate some sum, was the value of the seat. It was property, and substantial property, to the extent of some amount, notwithstanding the contingencies to which it was subject. In other words, the buyer took the risk of the contingencies; and they seem capable of estimation. The appellant once estimated them, and paid $5,500 for the seat in controversy; another buyer estimated them, and paid $8,500 for a seat. A thing having such vendible value must be regarded as property, and, as it could have been transferred by some means by appellant (one of the conditions expressed in section 70), it passed to and vested in his trustee. Whether it was subject to levy and sale by judicial process we need not consider, except incidentally in discussing the next contention."

Now, in opening discussion of this "contention"—the matter of exemption under the state laws—and with reference to the force to be accorded to decisions of the Supreme Court of Pennsylvania the court pointedly observes: "If those decisions are interpretations of the state statute, we must yield to their authority. If they are declarations of general law—mere definitions of property—we may dispute their conclusions, if their reasoning does not persuade." And, after conceding it to be entirely possible that a membership in a stock exchange may not be property subject to levy or sale upon ordinary fi. fa.—especially where through the attempted seizure and sale, conditions attaching in favor of fellow members were to be cut off—and after asserting that "undoubtedly the seat in the board was to be held and enjoyed subject to its limitations and restrictions," the court proceeds: "We expressed that limitation in Hyde v. Woods, 94 U. S. 525 [24 L. Ed. 264], but we decided nevertheless that a seat was property, and that if, upon its sale, any balance was left after paying the debts due to the members of the board, that balance could be recovered by the assignee in bankruptcy. This was not denied by the Supreme Court of Pennsylvania, and it may be that the court only intended to declare the priority of board creditors over general creditors. If so, tne decision expresses no rule with which we need take issue or which is relevant to the pending controversy; nor, indeed, if the case (Pancoast v. Gowen, 93 Pa. 66) may be construed more broadly. The Bankrupt Law of 1898 has made its own rule. For the same reason it is not necessary to review the cases cited from other jurisdictions. Whatever is in them favorable to appellant's contention was based upon the inability that the respective courts found in the law to transfer a title which could be insisted upon and enjoyed against the consent of the association. But that consequence, in our judgment, affects the value of a seat in a stock board, not its existence as property. The contingencies which may defeat or affect its title, or its enjoyment, will be reflected in its price, and if, notwithstanding them, a seat has a vendible value of from $5,000 to $8,000, it would seem that the law should have some process to reach it for the benefit of creditors: and the Bankrupt Act supplies the process. A trustee of a bankrupt's estate is the bankrupt's assignee, and we only repeat the statute when we say that the trustee is vested with whatever the bankrupt can convey; and the statute is something more than another mode of transferring property in invitum. It is a gift of privileges, and expresses the conditions upon which they are conferred."

Recurring to the case before us, the facts are that a membership in the respondent is attainable originally upon the payment of an initiation fee of $10,000 (rule 10, section 1); that it is transferable (rule 10, section 2), and the conditions will be referred to; that it passes to the legal representatives of a deceased member; that the present value of a seat is approximately $4,000; and that the herein bankrupt (so it is stated upon argument) offers no objection to assertion of title by the trustee. In my judgment, the pertinency of the suggestions quoted from the Edmunds Case is not open to contention. The question is not whether Weston, the trustee herein, if Glavin's right and title devolves upon him, will succeed in selling the seat or membership; nor whether the title of Glavin and the right to enjoy the membership, as and to the extent to which he enjoyed them, will in fact be conferred upon a pur-

chaser from the trustee, but whether Glavin's right or title, whatever it be, is reserved to him just because fellow members (creditors) may, if they see fit, protest its transfer by him. Obviously, the latter circumstance, as above stated, while it may operate to prevent a transfer, does not destroy the character of the right as being susceptible or capable of transfer. That provision of rule 10 confers upon such members a right which, if they choose to exercise it, may impede or obstruct the exercise by the member of his right of transfer. But it does not destroy the general right of transfer, nor the element of transferability. On the contrary, if there were no other evidence that it possesses such common attribute of property, that rule not only recognizes it, but, as I read it, formally imports it into and impresses it upon a membership. The matter must be viewed from the standpoint of the bankrupt, who under the law is obliged to surrender what to him is property. Therefore when, in connection with a valuable right or privilege having ordinary incidents or attributes of property, there are contingencies or conditions, the right none the less exists, though its freedom of exercise, and consequently its value, may thereby be greatly impaired. So, too, the degree of contingencies, the probability or certainty of their arising, cannot destroy the character of the right as a property right. The chances are not to be resolved for or against the bankrupt, to the end that he be allowed to retain the property if its value be small or negligible, and the trustee be required to take it if large. And it may be observed that, while creditors holding claims against the bankrupt which in amount greatly exceed the value of the membership have protested a transfer of the membership, that very protest concedes both salability and the capacity (on the part of some one, except for the protest) to sell. The size of the protesting creditors' claims cannot alter the status or character of the membership. Suppose, by way of illustration, that creditors, members of respondent, holding only $500 of claims against the bankrupt, protested a transfer; that the trustee had an opportunity to sell to one who was willing to pay the protesting creditors in full and to give the trustee $3,500, or suppose the trustee had an offer of $4,000, and suggested to the court that he be permitted to accept it on condition that he tender to the protesting creditors their claims in full, to the end that the obstacles otherwise in the path of effecting a transfer be overcome, and that in any event the purchaser assumed all risk of becoming a full-fledged member of respondent; would it not seem idle and absurd to say to the general creditors that, because no property or property right of the bankrupt had come to the trustee, the matter could not be entertained, even where, as in the case before us, the bankrupt is not resisting?

We are not concerned whether the trustee gets, or will get, much or little, but that the bankrupt's right, title, or privilege evidenced by the membership is property, and as such devolves by operation of law upon the trustee in bankruptcy, seems clear. The petitioner is entitled to an order or decree adjudging: That Glavin's membership in the respondent Board of Trade is property, and his right, title, and interest therein has passed to and is now held by Weston, trustee in bankruptcy, and that respondent be adjudged to recognize said trustee's succession thereto.

Henry S. Robbins, of Chicago, Ill., for appellant.
William E. Burke, of Milwaukee, Wis., for appellee.

Before MACK, ALSCHULER, and EVANS, Circuit Judges

ALSCHULER, Circuit Judge. The facts under which arise the questions involved in this appeal are set forth in the statement by the District Court preceding its opinion rendered in the cause. The opinion of that court, which, with the statement of facts, is to be found on pages 18 to 26 of the printed transcript herein, in our judgment correctly applies the law to the facts, and has our entire concurrence.

[3] Complaint is made that, if the last paragraph of the court's

decree is sustained, and certificate is issued by appellant in accordance with the command thereof, the trustee in bankruptcy will thereby acquire membership in the Board for general purposes regardless of the provision of section 2 of rule 10 of its by-laws, requiring as a condition of transfer of membership that the transferring member "has against him no outstanding, unadjusted, or unsettled claims or contracts held by members," and requiring the person to whom membership is to be transferred to be approved by the board of directors. The paragraph of the decree is as follows:

"It is further ordered, adjudged, and decreed that, in order to enable said Thomas C. Weston, as such trustee, to sell and dispose of said membership for the benefit of said estate, said Chicago Board of Trade issue to Thomas C. Weston, as such trustee, a membership certificate, as provided for in section 2, rule 10, of the Articles of Incorporation, Rules, By-Laws, and Regulations of said Chicago Board of Trade."

It is clear from the paragraph that it was not thereby intended to invest the trustee in bankruptcy with membership in the Board of Trade, carrying with it the privileges which ordinarily inhere in such membership. Such conclusion is required not only from the very situation, but is plainly indicated from the purpose of the decree as therein expressed in the words "in order to enable said Thomas C. Weston as said trustee to sell and dispose of said membership for the benefit of said estate." The certificate of membership to be issued under the decree will be such only as will enable the trustee to take such steps looking to the sale, disposition, and transfer of the membership as Glavin himself, if not in bankruptcy, might have done, but without in any manner concluding, binding, or foreclosing appellant with reference to any rights or obligations it may have under the aforesaid section 2, rule 10 of its by-laws.

The decree of the District Court is affirmed.