## In re VOORHEES.

No. 6279.

District Court, N. D. Ohio, W. D.

March 25, 1930.

E. R. Voorhees, of Woodville, Ohio, for bankrupt.

Elmer McClain, of Lima, Ohio, for Loan & Savings Co.

HAHN, District Judge.

The purpose of this proceeding is to determine the enforceability of an assignment of wages to the City Loan & Savings Company as to wages of Gerald L. Voorhees earned after his bankruptcy proceedings and after his discharge.

Briefly the facts are that on the 14th of January, 1928, Voorhees, in consideration of a loan of $300, gave to the loan company a chattel mortgage covering his household goods, his furniture, and his automobile, and he further gave an assignment of his future wages in the following words and figures:

"Assignment of Earnings.

"Be it known, that Gerald L. Voorhees, assignor, in consideration of Three Hundred and no/100 Dollars, in hand paid by The City Loan and Savings Company of Wapakoneta, Ohio, the receipt of which is hereby acknowledged, does hereby assign, transfer and convey to the said The City Loan & Savings Company, or assigns, Fifty per cent. (50%) of the wages, salary or earnings now due or hereafter to become due from any person, firm or corporation by whom the assignor may be employed.

"Provided nevertheless, that whereas the said assignor has executed and delivered unto the said assignee his certain promissory note of even date herewith, for the sum of Three Hundred and no/100 Dollars, together with a charge, including interest of three per cent. per month on the unpaid principal of said note until paid in full, except that on any part of said amount over $200, such charge is two percent per month.

"Now if the said assignor shall well and truly pay the above described note to the said assignee, or assigns, according to the terms, tenor and effect thereof, then these presents shall be void. Otherwise the said The City Loan and Savings Company, its agents or assigns, are hereby authorized and directed to collect, receive, retain and apply the proceeds of this assignment, in payment of said note, until paid in full, together with charges, including interest, as therein provided.

"In witness whereof, the assignor has hereunto set his hand 14 day of Jan., 1928.
"Gerald L. Voorhees
"Assignor.
"Mrs. Clara L. Voorhees
"Wife/Husband of Assignor."

At the time of this assignment said Voorhees was employed at the Paragon Refining Company. He changed his employment several times. He then filed a petition in bankruptcy, and on the 22d day of January, 1929, was adjudicated a bankrupt in this court. Shortly thereafter he entered the employment of the Herbrand Company, at Fremont, Ohio, a company with which he had not theretofore had any employment. The bankrupt scheduled the loan company as one of his creditors. It filed proof of claim for the balance due it upon its loan, and, if not already allowed, said claim will be allowed as a valid claim against the bankrupt's estate. The bankrupt was discharged September 12, 1929.

On the 26th day of April, 1929, the loan company exhibited its assignment to the Herbrand Company, and at that time secured payment of one-half of the wages then due Voorhees, amounting to $23.81. On May 10, 1929, the loan company again procured from the Herbrand Company $29.06, being one-half of the wages then due the bankrupt. The bankrupt filed these proceedings in this court, and a temporary injunction has been allowed against the loan company, thus preventing it from in any manner harassing bankrupt because of the above assignment. To all intents and purposes the matter is now here upon a final hearing and extensive briefs have been filed by industrious counsel. The claim of the loan company is based on the assignment both at common law and under the Ohio statute, which is herein set out.[1]

[1] "Sec. 6346—7. *Procedure in valid assignment of wages or earnings.* No assignment of any salary, wages or earnings, or any part thereof given to secure a loan shall be valid unless the same shall be in writing, signed in person by the person making the same; and if such person is married and living with husband or wife, signed also by the husband or wife of such person, as the case may be. Nor shall

There would be no doubt as to the disposition which the court should make of this

---

any such assignment be valid unless the same shall be in writing and made to secure a debt contracted simultaneously with the execution of such assignment, with all blank spaces therein filled in with ink or typewriting, together with the date, names of the assignor and assignee, the amount for which such assignment is made, together with the rate of interest charged.

*"Term assignment defined; assignment of future wages.* The term assignment as used in this section shall include every instrument purporting to transfer an interest in or any authority to collect the wages, salary or earnings of such person. Any assignment of wages, salary or earnings, made in accordance with the provisions of this section shall bind the wages, salary or earnings earned or to be earned by the assignor until the loan secured by such assignment and interest thereon is fully paid, but no assignment or conveyance of wages, salary or earnings to be earned in the future given to secure a loan shall be binding for a sum in excess of fifty per cent. of the amount due or to become due the person making such assignment.

*"Priority of assignment, how obtained.* In order to obtain a priority of any such assignment over any other assignment, the holder thereof, shall deposit a true copy with the recorder of the county where the person making such assignment, if a resident of the state, resides, or if not a resident of the state, then with the recorder of the county where such assignment is made, together with a sworn statement by the holder, his agent, or attorney, of the amount due, and the rate of interest charged. All such assignments shall be filed and preserved by the recorder as provided in section 8562 of the General Code. When so deposited, any such assignment shall have priority over any other assignment subsequently deposited as herein provided.

*"Void after one year unless re-filed.* Every such assignment so filed shall be void as against other assignments to creditors of the person making it after the expiration of one year from the filing thereof, unless within thirty days next preceding the expiration of said period of one year a true copy thereof, together with a sworn statement by the holder thereof, his agent or attorney, of the amount then due and rate of interest charged is re-filed with the county recorder as herein provided.

*"Sworn copy of assignment and statement, filed with employer.* A sworn copy of such assignment so filed together with a statement of the amount due filed with any employer of the assignor shall bind not exceeding fifty per cent. of any salary, wages or earnings due or to become due such assignor from the time the same is filed with such employer until any such loan and interest is fully paid and discharged." 106 O. L. 284; 102 O. L. 471, § 4.

*"Sec. 6346—12. Assignment of more than 50% of personal earnings void.* § 1. It shall

matter in the absence of the statute. The federal courts have been uniform in holding that the loan company's assignment is unenforceable after the bankrupt's discharge. The great weight of authority among the decisions of the state courts is of the same import, but we do not cite them, for this is a matter upon which the final rule must be announced by the federal courts. So far as we are aware, no court other than a District Court has passed upon the question in the federal courts, but the cases are all well reasoned and all come to the same conclusion, which is that the assignment is unenforceable at common law. These decisions are: In re West (D. C.) 128 F. 205, 206; In re Home Discount Company (D. C.) 147 F. 538; In re Ludeke (D. C.) 171 F. 292; In re Lineberry (D. C.) 183 F. 338, 340; In re Gillespie (D. C.) 209 F. 1003; and In re Green (D. C.) 213 F. 542.

Counsel for the loan company here rests his contention that the assignment is enforceable notwithstanding bankruptcy proceedings and the discharge of the bankrupt because of the Ohio statute set out in the margin. We cannot agree. The statute is section 6346—7 of the General Code. It is classified under that chapter of the General Code which deals with pawnbrokers, chattel and salary loans, and purports to be a police regulation. It does not by its terms or by implication purport to deal with bankruptcy matters or the effect of a discharge in bankruptcy. The statute was first passed as part of an act entitled "To regulate and license the loaning of money upon chattels or personal property of any kind and of purchasing or making loans upon salaries or wage earnings," 102 Ohio Laws, p. 469 (1911); and was amended, with a similar title, in 105–106 Ohio Laws, p. 281 (1915). Section 6346—12 (enacted 110 Ohio Laws, p. 209) was amended in 1929.[2]

---

be unlawful for any person, partnership, corporation, or firm to accept from any person any assignment of his personal earnings assigning more than 50% of the personal earnings of the assignor. Any such assignment shall be void." 110 v. 209. Eff. July 20, 1923.

[2] *"Assignment of personal earnings; limitations; priority.* No assignment of, or order for, wages or salary shall be valid unless made in writing by the person by whom the said wages or salary are earned and no assignment of, or order for, wages or salary made by a married person shall be valid unless the written consent of the husband or wife of the person making such assignment or order is attached to such assignment or order; and no assignment or order for wages or salary of a

The loaning of money on goods and chattels and the wages of a working man furnishes a fertile field for the exercise of the police power, both for the benefit and the protection of the wage-earner. In re Home Discount Company, supra, 147 F. pages 545-547.

The full effect of the statute is spent without construing it as an attempt to change the common law with reference to the effect of a discharge in bankruptcy upon such an assignment. Among the changes which it makes over the common law are that it makes a partial assignment valid; it requires the signature of the wife of the wage-earner; it limits the assignment to 50 per cent. of the wages due; it requires that no blanks be left in the assignment; it requires the rate of interest to be stated; it requires the assignment to be recorded to make it valid against other assignments; it must be to secure a debt incurred simultaneously with the assignment; it requires the employer to respond to the assignee; and, perhaps in other respects, it changes the common law. It may be fairly argued also, because of the general language of the statute (in the absence of bankruptcy proceedings and a discharge), that the statute makes an assignment of future wages valid even as to a then nonexisting employment, which was perhaps not valid because of the decision of the Supreme Court of Ohio in Rodijkeit v. Andrews, 74 Ohio St. 104, 77 N. E. 747, 5 L. R. A. (N. S.) 564, 6 Ann. Cas. 761. The Supreme Court of Ohio, so far as we are aware, has not yet construed the statute in so far as a nonexisting employment is involved. American Laundry Machinery Company v. Daneman, 118 Ohio St. 331, 160 N. E. 897 (1928).

While the changes intended by the Legislature in the enactment of this statute may have been many, it seems to us that the statute should not be construed as an attempt

to make an assignment of wages enforceable after the wage-earner has been discharged in bankruptcy as against the debt alleged to be secured by the assignment. Since, under the Constitution of the United States, Congress has the paramount power to enact bankruptcy acts, the operation of the state statute would be suspended during the time that the Bankruptcy Act of the United States was in force and effect, if it be construed as affecting a bankrupt's right to a discharge. 7 C. J. p. 22, note 38. See also International Shoe Co. v. Pinkus, 278 U. S. 261, 49 S. Ct. 108, 73 L. Ed. 318.

It has lately been said in Kothe v. R. C. Taylor Trust, 280 U. S. 224, 50 S. Ct. 142, 74 L. Ed. 382 (1930), that agreements tending to defeat the purpose of the Bankruptcy Act must be regarded with disfavor. The same reasoning, it seems to us, applies with greater force to a statute which is subversive of the purpose of the Bankruptcy Act (11 USCA).

It was said in Hardie v. Swafford Brothers Dry Goods Co. (C. C. A. 5) 165 F. 588, 20 L. R. A. (N. S.) 785, that: "The release of the honest, unfortunate, and insolvent debtor from the burden of his debts, and his restoration to business activity in the interest of his family and the general public, is one of the main objects of the bankruptcy law of 1898." The same thought is expressed by the same court in White v. Brown Shoe Company (C. C. A. 5) 30 F.(2d) 674 (1929). Other authorities to the same effect are: Burlingham v. Crouse, 228 U. S. 459, 33 S. Ct. 564, 57 L. Ed. 920, 46 L. R. A. (N. S.) 148; In re Munford (D. C.) 255 F. 108. And it has been held that the Bankruptcy Act is remedial in character and should not be subjected to a narrow or illiberal interpretation; it should be construed reasonably and according to the fair import of its terms, with a view to effect its objects and to promote justice. Blake, etc., v. Francis-Valentine Co. (D. C.) 89 F. 691.

The following language of the Supreme Court of the United States in Re Chicago Board of Trade v. Johnson, 264 U. S. 1, 11, 44 S. Ct. 232, 234, 68 L. Ed. 533, is in point here: "Congress derives its power to enact a bankrupt law from the federal Constitution and the construction of it is a federal question. Of course, where the Bankrupt Law deals with property rights which are regulated by the state law, the federal courts in bankruptcy will follow the state courts; but when the language of Congress indicates a policy requiring a broader construction of the statute than the state decisions would

---

minor shall be valid unless the written consent of a parent or the guardian of such minor is attached to such order or assignment. No assignment of, or order for, wages or salary shall be valid for more than twenty-five (25%) per cent. of the earnings, wages or salary of any married person; nor shall such assignment be valid for more than fifty (50%) per cent. of the earnings, wages or salary of any unmarried person.

"Assignments of wages shall have priority as to each other from the time same are filed with the employer of the assignor, and the balance due any married person after 25% shall have been so assigned or due any unmarried person after 50% shall have been so assigned shall not be subject to any further assignment." 113 O. L. 479.

give it, federal courts cannot be concluded by them. Board of Trade v. Weston, 243 F. 332, 156 C. C. A. 112."

This main object and purpose of the Bankruptcy Act (11 USCA) is evolved not by a construction of isolated provisions of the Bankruptcy Act, but by taking into consideration all of the provisions of that act. The problem here likewise cannot be solved by placing a narrow construction upon certain provisions of the Bankruptcy Act which seem to leave room for the contention that Congress did not intend that a discharge should be operative to make unenforceable an assignment of the character here involved. Whatever the result of these narrow constructions, the spirit of the Bankruptcy Act leads to the conclusion that Congress did intend that the debt should be discharged, and that an assignment of the character here involved should be unenforceable after such discharge.

The debt here involved is provable in bankruptcy. It was in fact so proven. The argument in favor of the enforceability of the assignment is, it seems to us, not advanced if it can be shown to be the law that the Bankruptcy Act does not make provision for proving as a claim the assignment alone. The assignment is ancillary or auxiliary only to the debt or obligation which it is to secure, and it seems to us that when the main or primary obligation is actually discharged and extinguished by the Bankruptcy Act, it must likewise follow that the assignment is annulled and becomes unenforceable. Any other view we think would overlook entirely the broad purpose of the Bankruptcy Act to give to the wage-earner a fresh start for the benefit not only of himself and his family, but the public in general. The words of the assignment that it shall remain in effect until the debt has been paid also must be construed to include the intent that the assignment shall become unenforceable when the debt is otherwise legally discharged or extinguished. Such construction is in harmony with other decisions which deny to liens the effect of attaching to after-acquired property. Collier on Bankruptcy (13th Ed.) vol. 1, p. 600, et seq.; Brenen v. Dahlstrom Door Co., 189 App. Div. 685, 178 N. Y. S. 846, 44 Am. Bankr. Rep. 386.

It is, of course, true that section 67d of the Bankruptcy Act (11 USCA § 106), preserves all existing liens upon the property of the bankrupt, but it is likewise true, it seems to us, that the Bankruptcy Act proceeds upon the theory that there can be no present lien upon nonexisting property; hence, that no lien is effective or operative to take from the bankrupt property, earnings, income or wages which are earned by, and come into the possession of, the bankrupt after his adjudication and discharge in bankruptcy. It seems to us that any state law which attempted to create a lien upon such property or earnings so as to be effective and operative after the discharge of the bankrupt would be construed by the federal courts to be ineffective for that purpose. Brenen v. Dahlstrom Door Co., supra.

If the assignment here creates a lien, the most that can be claimed for it is that it is a lien which attaches in equity upon the wages as soon as they are earned. 37 C. J. 324, note 72. The same thought was expressed in Re West, supra, the court saying, "The theory of a lien upon the earnings of future labor is not that it attaches to such earnings from the moment of contract of pledge or assignment, but from the moment of their existence. It is needless to say that there can be no lien upon what does not exist."

And in Re Lineberry, supra, it was said: "An assignment of wages to be earned in the future is, at most, an executory agreement to transfer them when earned. It creates no lien on them, except when and as they come into existence by being earned. At the date of the adjudication, the subsequent wages of the bankrupt had not been earned and were not in existence, and the creditor had no lien on or title to them, by virtue of his assignment, which the bankrupt law could preserve. The bankrupt law does not continue a dischargeable debt for the purpose of permitting a lien to be created after the adjudication, but only to preserve and enforce a lien in existence at the date of the adjudication. The discharge, when granted, relates back to the date of adjudication, and property acquired by the bankrupt, intervening the filing of the petition and the granting of the discharge, is not appropriated to payment of his debts."

It seems to us that the purpose of the Bankruptcy Act is plain, and that any device, whether an assignment, a power to collect (1 Williston on Contracts, § 414, note 88), or what not, would be ineffectual against its purpose to give the bankrupt a new start. It is true that a discharge in bankruptcy does not in a technical sense pay the debts of the bankrupt, but it leaves with the bankrupt an option which may not be interfered with in advance of his discharge, to refuse the payment of debts incurred prior to the filing of his petition in bankruptcy. The option lies with

him to pay or not to pay such debts, and he can be compelled to do so only because of his acts or conduct after the filing of his petition in bankruptcy. Collier on Bankruptcy (13th Ed.) pp. 642 to 645.

If we are correct in these conclusions there is this disadvantage to wage-earners, that they may not have the same ability to borrow money or to incur obligations, with the security, only, of future unearned wages; but this possible disadvantage to the wage-earner cannot change the plain purpose and effect of the provisions of the Bankruptcy Act.

In our opinion the acts of the City Loan & Savings Company already set out herein in collecting, upon two occasions, half of the wages due the bankrupt were in defiance of the Bankruptcy Act and the bankruptcy proceedings in this court. The temporary injunction heretofore granted should be made permanent. An order may be drawn accordingly.